Evans, Respondent, vs. Bacon, Appellant.

*June 1—June 18, 1903.*

*Waters and watercourses: Water power: Milldams: Abatement of unlawful height: Evidence: Appeal and error: Judgment.*

1. Evidence in an action by the proprietor of an upper water power to abate the height of the dam of a lower owner examined, and *held* to sustain a finding that defendant's dam had been raised in violation of sec. 3375, R. S. 1878, forbidding the erection of a dam to the injury of any existing mill.
2. In such case, the judgment improperly provided that the dam and *water* should be lowered three feet, and was modified so as to require the dam to be lowered three feet.

Appeal from a judgment of the circuit court for Monroe county: James O'Neill, Judge. *Modified and affirmed.*

Action to partially abate a dam. Plaintiff and defendant were owners of improved water powers on Beaver creek, Monroe county, Wisconsin, defendant's being the lower one. The dams were built about forty years prior to the trial, defendant's being the one first constructed. Plaintiff's claim, upon which he recovered, was that when defendant's dam was authorized and constructed to the height of nine feet above the natural bed of the creek, and the upper dam was built with reference thereto, the backwater from the lower power did not reach the tailwater of the upper one, and between 1897 and 1899 the lower dam was raised about three feet, to the injury of the upper power in that it raised such water so as to flood plaintiff's wheel and shorten the working head at his power about three feet.

There were two trials. On the first a jury rendered an advisory verdict, the findings being in plaintiff's favor, the increased head of water found, however, being less than ultimately found. The circuit judge died, rendering a new trial necessary. Upon the second trial findings of fact were made to the following effect: Plaintiff's dam was built in 1856 and defendant's in 1855, the latter being authorized and constructed to raise a nine-foot head of water. Such head was not materially increased thereafter till 1897. Subsequently thereto, and chiefly in 1899, when a new dam was put in, the old one having been carried out by high water, a head of water was created three feet higher above the old creek bed than was created by the improvement of 1855 and the head that had been maintained uniformly up to 1897. By reason of the increased height of the dam the water was raised at plaintiff's dam so as to shorten his working head some three feet. In order to restore the former conditions it is necessary to reduce the level of the water at defendant's dam to a point three feet below the top of the flashboards thereon. The damages suffered by plaintiff up to the time of the trial

were $300.    Judgment was entered in plaintiff's favor accordingly.

For the appellant there was a brief by *Bleekman & Bloomingdale,* and oral argument by *F. H. Bloomingdale* and *A. E. Bleekman.*

*Howard Teasdale* and *George H. Gordon,* for the respondent.

MARSHALL, J.    These facts, in the main, are conceded by the parties: Appellant's mill privilege was improved about 1855.    Respondent's was improved about one year later. The lower proprietor was at the start entitled to create a head of water of nine feet regardless of its effect upon the mill privilege above.    The relative rights of the upper and lower proprietors did not change from 1855 till the commencement of this action.    At no time prior to 1899 did the operation of the lower power materially encroach upon the upper power. While the lower dam was carried out several times and was as often rebuilt, the one in place when this action was commenced was substantially in the location where the first dam was constructed.    Except as otherwise affected by contract, the rights of the owner of the lower power in 1878 became fixed by sec. 3375, R. S. 1878, as amended in that year, precluding him from thereafter raising the height of his dam to the injury of the upper proprietor.

The court granted judgment in respondent's favor upon the theory that appellant's dam was raised some three feet subsequent to 1878, and three feet higher than it was ever theretofore maintained or authorized to be maintained, to the injury of respondent's power by reducing the available head of water there three feet.    Counsel for appellant claim there is no evidence sustaining the finding of the court in that regard.    As we view the record, if such claim cannot be sustained the judgment must be affirmed.

There seems to us, upon a careful study of the record, to

be a sharp conflict of evidence on the question of whether the lower dam was raised as alleged, with sufficient evidence in favor of the affirmative to preclude us from disturbing the trial court's finding upon the ground that it is clearly against the preponderance of the evidence. Appellant's counsel suggest that the proofs in appellant's behalf were made with reference to physical situations rendering the same conclusive in his favor. That is true if the proof as to such physical situation is conclusive, but that depends upon many things going to the credibility of witnesses. But the same is true of the evidence produced by respondent. The trial court no doubt assumed, as the evidence of appellant's witnesses tended to show, that prior to 1897 the dam was maintained substantially to its full authorized height. Mr. John Moffat, who became interested in the property in 1859, knew of it as early as 1857, and continued interested therein till 1867, testified that during his time, with a nine-foot dam, there was about a thirteen-foot head at the wheel. Mr. T. B. Gibson testified that he put in a new nine-foot dam at the lower power in 1878, obtaining a head of eleven feet, or over, at the wheel. There was much other evidence tending to show that from 1855 to 1897 the full authorized head of nine feet of water was uniformly maintained at the lower dam, without any backwater being created injurious to the upper power. True, there was evidence that plaintiff complained of backwater in 1879 and admitted that he had lowered his wheel, but he denied the same and produced testimony which, with his own, made a pretty strong case to the effect that the only change made in the wheel at any time was to raise it some four or five inches.

The foregoing, with the following brief statement of the general nature of the evidence, will show that there was good ground upon which to rest the findings that defendant's dam was raised some three feet after 1897. Regarding the finding that respondent's wheel remained in substantially the

same location as regards the bed of the creek from the first as a verity, as we must in view of the evidence, and also the finding that appellant's dam from the first was maintained at a uniform height above the bed of the creek till 1897, if there was a large increase in the height of the water after that period, as the court found, the conclusion is irresistible that an increase in the height of the lower dam must have caused it. The evidence that there was such a raise of water, if believed, puts the matter beyond any reasonable doubt. Several witnesses testified with reference to fixed objects on the bank of the pond, such as sewer openings, that the height maintained from 1855 to 1897 was thereafter materially increased. Several witnesses testified that, whereas prior to 1897 the backwater came only to within about four inches of the apron of the plaintiff's wheel, after 1899 the water rose to eight inches above the top thereof, being an increase of some thirty-two inches, which was added to by about four inches when the wheel was in operation, by reason of there not being a free flow away therefrom. An engineer who carefully observed the operation of the water at the upper dam, measured the height of the lower dam, and leveled a point above respondent's wheel with the top of appellant's dam, testified that such point was five inches above the top of the wheel, or thirty-two inches above the old level of the backwater; that appellant's dam, from the floor thereof to the top of the flashboards, was about twelve feet, and that in order to restore the former conditions at respondent's dam the level of the water at the lower dam would have to be kept three feet below the top of the flashboards as appellant maintained the same. Now, without going into the evidence in detail, we can safely say that it was as direct, positive and satisfactory as to the physical situations, indicating that the lower dam was raised subsequent to 1897, as the evidence in respect to situations indicating to the contrary. There can be no two reasonable diverse opinions on this: If the level of

the water in the creek in 1897, below respondent's wheel, was some three feet lower than at the time of the commencement of this action, as respondent's evidence clearly tends to show, and conclusively shows, if the evidence of circumstances is to be believed, the change must have been caused by an increase in the height of the dam. Further, if the dam at the lower privilege was maintained from 1855 to 1897, generally speaking, up to the rightful height, as appellant's testimony tends to show, then the increased backwater mentioned, subsequent to 1897, must have been caused by an unlawful encroachment upon respondent's rights. Witnesses may have been mistaken. They may have testified falsely. But if we take as verities that the backwater at respondent's power was three feet, or thereabouts, higher after 1899 than from 1855 to 1897, and that prior to the latter date the full rightful height of the water at the lower power was as a rule maintained, no amount of testimony from the mouths of witnesses can cast any doubt upon the truth which such circumstances indicate, namely, that subsequent to 1897 the lower dam was unlawfully raised sufficiently to cause the increased backwater.

We have not overlooked the instrument to which our attention was called by counsel for appellant, by which the privilege claimed by appellant was measured out to his distant predecessor in title. That does not change the situation. We still have the testimony which the court believed and had a right to believe, so far as we can discover, that the full granted right was as a rule enjoyed up to 1897, without raising the water to a sufficient height to interfere with respondent's power, while thereafter the working head at such power was cut down about three feet by the back water on the wheel. The rule that the decision of the trial court on matters of fact cannot be disturbed on appeal unless contrary to the clear preponderance of the evidence applies with more than ordinary force to this case because the circuit judge had excep-

tional advantages for reconciling, if possible, the conflict between evidence tending to prove appellant's side of the case and the evidence tending to prove respondent's side, and, where such reconciliation is found to be impossible, for determining what to believe and what not to believe. Then there was the circumstance of the previous trial with the verdict of a jury sustaining respondent's contention that the head of water at the lower dam was materially increased in and after 1899. The trial judge on each occasion, and the jury on the first trial, viewed the premises involved in the litigation. That was a very valuable aid in view of the fact that a filling up of the bed of the creek at the lower dam and for some distance below the same to the extent of three or four feet, subsequent to 1855, would account for the fact, if it were a fact, that, whereas at the time of the trial there was substantially the same head of water at the lower dam as in 1855, the backwater at the upper power was three feet higher at the later date than in 1855. There are ample circumstances to suggest that the bed of the creek was materially raised at the lower dam after 1855 in that many dams were carried out by high water, necessarily depositing the material of which they were composed in the creek bed. Several witnesses testified that the creek bed in 1899 was several feet higher than it was when the dam was constructed in 1855. There was considerable evidence in that line and the court found the truth to be in accordance with what such evidence tended to prove. The court was aided largely, no doubt, in reaching that conclusion, by the view of the premises. Viewing it as a verity, the conclusion as to the raising of the creek bed, the increase in the height of the backwater while the head at the lower dam remained unchanged, is clearly explained. It seems clear that if the findings of the trial court are not clearly sustained by the evidence, they are at least not against the clear preponderance thereof.

We observe that the form of judgment is that defendant's

dam and water should be lowered to a point three feet below the top of his flashboards, as said dam was constructed and maintained at the time of the commencement of this action, January 11, 1900. It is unfortunate that the decision was not made more definite and certain, and strictly in accord with the rights of the parties. Necessarily, the level of the water in the pond must vary with the stage of the water in the creek. At whatever height the dam is constructed the water will at times run over the top and at times will be below the same. It would have been better to have determined the proper height of the dam with reference to some permanent object, and then required a lowering thereof accordingly. We cannot modify the judgment in that respect, but we can so modify it as to require merely a lowering of the dam three feet, considering the flashboards as part of the dam. That will necessarily leave open, as a subject for future controversy, the question of how high the dam was maintained at the time of the commencement of this action. In case of a dispute there will be nothing in the judgment by which it can be definitely settled, and further litigation may probably result.

*By the Court.*—The judgment appealed from is modified so as to require the defendant's dam, considering the top thereof to be that of the flashboards as the same were maintained January 11, 1900, to be reduced three feet, and as so modified it is affirmed.